J-A18014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
    :        PENNSYLVANIA
    :
             v.     :
    :
    :
SHANNON R. HEINDL     :
    :
        Appellant     :     No. 57 WDA 2021

Appeal from the Judgment of Sentence Entered November 16, 2020
In the Court of Common Pleas of Elk County Criminal Division at No(s):
CP-24-CR-0000172-2004

BEFORE: OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:         **FILED: NOVEMBER 30, 2021**

Appellant, Shannon R. Heindl, appeals from a judgment of sentence entered November 16, 2020, after the trial court found her guilty of indirect criminal contempt ("ICC"). We vacate Appellant's contempt conviction, together with her November 16, 2020 judgment of sentence.

The pertinent facts and procedural history of this case are as follows: While employed as a secretary for a probate law firm, Appellant withdrew funds from the estate of Jared Jones, which the firm handled on behalf of its client, Ruth Streich, the administratrix of the estate. N.T. Preliminary Hearing, 7/29/04, at 4-5. Ms. Streich authorized one transaction, a loan in the amount of $80,000.00. *Id.* at 6. Another $86,000.00 was withdrawn without Ms. Streich's knowledge or consent *via* pre-signed checks payable to Appellant. *Id.* at 8, 10. After Ms. Streich approached her lawyer to discuss the withdrawals, Appellant wrote six separate checks made payable to Ms.

Streich to reimburse the estate. *Id.* at 12, 14. All of Appellant's checks were denied for insufficient funds. *Id.* On June 3, 2005, Appellant pleaded guilty to bad checks,[1] graded as a felony of the third degree. Following Appellant's guilty plea, the trial court twice attempted to schedule a restitution hearing before entering the following order:

> AND NOW, this 28th day of September, 2005, **upon stipulation of [Appellant]**, who is represented by Benjamin J. Vrobel[, Esquire], and the Commonwealth, IT IS ORDERED that restitution shall be in the amount of $166,000.[00.]

Trial Court Order, 9/29/05 (emphasis added). The order further directed the Elk County Probation Department to prepare a presentence investigation ("PSI") report. *Id.* On January 9, 2006, the trial court sentenced Appellant, *inter alia*, to the following:

> 1. [Appellant] shall be placed on probation for a period of seven years under the supervision of the Elk County Probation Department.
>
> *     *     *
>
> 3. [Appellant] shall pay restitution in the amount of $166,000[.00] to Ruth Streich, [A]dministratrix of the Estate of Jared Jones.

Trial Court Order, 1/11/06. Appellant filed neither a post-sentence motion nor a notice of appeal challenging her January 9, 2006 judgment of sentence.

---

[1] 18 Pa.C.S.A. § 4105(a)(1).

In the ensuing years, Appellant made several monthly payments toward restitution. Appellant's last restitution payment occurred on April 18, 2016, *see* Trial Court Opinion, 3/29/21, at 1, after which the Commonwealth filed a delinquency notice with the trial court on June 8, 2016. *See* Trial Court Docket Entry, 6/8/16.

> On April 3, 2018, the Commonwealth filed a petition for contempt alleging that [Appellant's] outstanding restitution balance as of April 3, 2018, was $141,612.50, and that [Appellant's] last payment occurred on April 18, 2016. A hearing was initially held on September 17, 2018, and an [o]rder entered [ ] on September 17, 2018. [Appellant] appealed [the September 17, 2018 o]rder and on November 5, 2019, the appeal was quashed on the basis that [the September 17, 2018 o]rder was not a final order. Following the first appeal, a hearing was held on November 16, 2020, and an [o]rder entered finding [Appellant] in indirect criminal contempt of the [trial c]ourt's [January 9, 2006 sentencing] order and sentencing [Appellant] to a [90]-day period of incarceration with the ability to purge herself of the contempt.

Trial Court Opinion, 3/29/21, at 1. This appeal followed.[2]

Preliminarily, we must determine the timeliness of Appellant's appeal, as it implicates our jurisdiction. *See Commonwealth v. Green*, 862 A.2d 613, 615 (Pa. Super. 2004) ("Jurisdiction is vested in the Superior Court upon the filing of a timely notice of appeal"). "A direct appeal in a criminal proceeding lies from the judgment of sentence." *Commonwealth v.*

---

[2] Pursuant to Pa.R.A.P. 1925(b), the trial court ordered Appellant to file a concise statement of errors complained of on appeal, which Appellant timely filed on February 4, 2021. The trial court issued its 1925(a) opinion on March 29, 2021.

***Patterson***, 940 A.2d 493, 497 (Pa. Super. 2007) (citation omitted). Absent filing a timely post-sentence motion, an appellant must file his or her appeal "within 30 days of the **imposition of the judgment of sentence in open court**." Pa.R.A.P. 903(c)(3) (emphasis added); ***see also*** Pa.R.Crim.P. 720(A)(3) ("If the defendant does not file a timely post-sentence motion, the defendant's notice of appeal shall be filed within 30 days **of imposition of sentence**.") (emphasis added). Where an appellant foregoes the filing of a timely post-sentence motion, "the appeal period begins to run from the date sentence is imposed." ***Commonwealth v. Dreves***, 839 A.2d 1122, 1127 (Pa. Super. 2003) (citation and quotation omitted). Here, the trial court imposed Appellant's judgment of sentence in open court on November 16, 2020 and Appellant elected not to file a post-sentence motion. ***See*** N.T. Contempt Hearing, 11/16/20, at 40-41. Consequently, Appellant needed to file her notice of appeal within 30 days of November 16, 2020, *i.e.*, on or before December 16, 2020. Pa.R.A.P. 903(c)(3); Pa.R.Crim.P. 720(A)(3). Appellant's notice of appeal filed on January 7, 2021, therefore, is patently untimely.

Notwithstanding the untimely nature of Appellant's notice of appeal, "we must determine whether an administrative breakdown in the court system excuses the untimely filing of the notice of appeal." ***Patterson***, 940 A.2d at 498. Our caselaw and procedural rules mandate that trial courts confirm, on the record at the time of sentencing, that the defendant has

been advised of, *inter alia*, the nature and timing requirements of his or her post-sentence and appellate rights. **See** Pa.R.Crim.P. 704(C)(3)(a). The failure to so advise a defendant on the record at the time of sentencing constitutes a breakdown in the court system which excuses the untimely filing of a notice of appeal. **Patterson**, 940 A.2d at 498.

A review of the certified record reveals that neither the trial court nor defense counsel, at the time of sentencing, advised Appellant of her right to file a post-sentence motion, a notice of appeal, or the timeframe within which to take such action. **See** N.T. Contempt Hearing, 11/16/20, at 40-41. This failure to advise Appellant of her appellate rights constitutes a breakdown in the operation of the court; as such, we will not quash the instant appeal as untimely. **Commonwealth v. Wenzel**, 248 A.3d 540, 547 (Pa. Super. 2021).

Within her brief, Appellant raises the following claims:

1. Did the trial court err and/or violate the Appellant's due process rights by failing or refusing to hold a hearing regarding the legality of restitution; and whether or not the restitution awardee is a "direct victim" as contemplated by 18 [P.S.] § 11.103; and further setting a legally inappropriate award; and because of these fundamental errors should the restitution be stricken?

2. Did the trial court act illegally and fail to follow its duties, by failing to have a restitution hearing in excess of 16 years, and further failing to collect for restitution or revoke [Appellant's] probation during the ten years she was on probation, and further failing twice to have a full hearing; and finally after years of delay the [trial] court failed to follow the law with regard to setting and collecting restitution, specifically to 18 Pa.C.[S.]A.

§ 1106(f) and because of these errors should the court be barred from collections for the improprieties as well as by latches?

3. Did the [trial] court violate its duty to be a determiner of restitution and the amount to be paid by the Appellant by setting the full amount of restitution due and owing then finding the Appellant in contempt and sentencing her to 90 days in jail, and turning issues of ability to pay, a payment plan and evaluation of medical documentation over to the adult probation office?

Appellant's Brief at 4-5 (extraneous capitalization omitted).

On appeal, Appellant challenges a judgment of sentence imposed after she was found in ICC.[3]  We review ICC determinations for an abuse of discretion.  *In re Contempt of Cullen*, 849 A.2d 1207, 1210 (Pa. Super. 2004).  An abuse of discretion is not merely an error of judgment, but is rather "the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record."  *Commonwealth v. Griffiths*, 15 A.3d 73, 76 (Pa. Super. 2010).  A well-settled principle of criminal contempt jurisprudence holds that an individual cannot be held in contempt for violating an order that the trial court lacked authority to issue.  *See Commonwealth v. Null*, 186 A.3d 424, 429 (Pa. Super. 2018)

---

[3] ICC is a violation of a court order that occurred outside the court's presence.  *Commonwealth v. Ashton*, 824 A.2d 1198, 1203 (Pa. Super. 2003).  The elements of ICC are: (1) the court's order was definite, clear, specific, and leaving no doubt in the person to whom it was addressed of the conduct prohibited; (2) the contemnor had notice of the order; (3) the act constituting the violation was volitional; and (4) the contemnor acted with wrongful intent.  *Commonwealth v. McMullen*, 961 A.2d 842, 849 (Pa. 2008).

("[W]here a court enters an order without authority or legal right to make such an order, it is powerless to attempt its enforcement. … The disregarding of an order in excess of the court's authority does not give rise to contemptuous conduct by the parties involved.") (quotation and citation omitted). Because Appellant cannot be held in contempt for violating an order that the sentencing court was not authorized to impose, we consider whether the sentencing court possessed authority to order restitution as it did in this case.

The trial court imposed restitution, not as a condition of probation, but rather as a separate sentence under 18 Pa.C.S.A. § 1106. The version of § 1106 that was in effect when Appellant was originally sentenced provided, in relevant part:

(c) Mandatory restitution. –

(1) The court shall order full restitution:

(i) … so as to provide the victim with the fullest compensation for the loss. …

* * *

(h) Definitions. – As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

* * *

"Victim." As defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929. The term includes the Crime Victim Compensation Fund if compensation has been paid by the Crime Victim's Compensation Fund to the victim and any insurance company

that has compensated the victim for loss under an insurance contract.

18 Pa.C.S.A. § 1106 (repealed Oct. 24, 2018, P.L. 891, No. 145, § 1, effective Jan. 31, 2005). Appellant argues that, prior to the 2018 amendments, § 1106 did not permit designation of an estate or the administratrix of an estate as a direct victim eligible to receive restitution. Appellant's Brief at 24. Therefore, the trial court lacked statutory authority to impose her restitution sentence. In support, Appellant cites to the recent cases of **Commonwealth v. Veon**, 150 A.3d 435 (Pa. 2016) and **Commonwealth v. Hunt**, 220 A.3d 582 (Pa. Super. 2019). To the extent that Appellant specifically challenges her ICC conviction and judgment of sentence, we agree.

Our Supreme Court undertook a full evaluation of the pre-amendment version of § 1106 in **Veon** to determine whether the then-existing version of § 1106 (and the version applicable herein) contemplated a government agency in its definition of a "victim." In defining "victim," the Court explained:

> Section 479.1, formerly codified at 71 P.S. § 180-9.1, since has been recodified in the Crime Victims Act, 18 P.S. §§ 11.101, *et seq*. (the "CVA"). **See Commonwealth v. Brown**, 981 A.2d 893, 896 n.9 ([Pa.] 2009). The CVA defines "victim" as follows:
>
> (1) A direct victim.
>
> (2) A **parent or legal guardian** of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

(3) A **minor child** who is a material witness to [enumerated crimes and offenses] committed or attempted against a member of the child's family[.]

* * *

(4) A **family member** of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiancé, one of whom is to be identified to receive communication as provided for in this act, except here the family member is the alleged offender.

18 P.S. § 11.103 [ ]. A "[d]irect victim" is defined by the same section as "[a]n **individual** against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers **physical or mental injury**, **death**, or the **loss of earnings** under this act. **Id.** [ ]

**Veon**, 150 A.3d at 465 (emphasis in original) (parallel citation omitted).

After undertaking a thorough review of applicable caselaw and legislative history, the **Veon** Court concluded:

[I]t is clear that the plain text of Section 11.103[, which sets forth the definition of "victim" incorporated by reference into section 1106,] still envisages "victims" as "persons[."] A "victim" under Section 11.103 must be "a direct victim," *i.e.*, an "individual" who has suffered injury, death, or loss of earnings; or a "child," "parent," "guardian," or "family member." Every relevant noun unequivocally describes a human being, not a government agency, and nowhere else is there a relevant definition that persuades us to broaden the common understanding of these words.

**Id.** at 472.

After the Supreme Court's ruling in **Veon**, our General Assembly amended § 1106 to broaden the applicability of § 1106. Within the amendments, the General Assembly added to the list of entities to which restitution payments may be made. **See** § 1106(c)(1)(ii) (P.L. 891, No.

- 9 -

145, § 1, effective Oct. 24, 2018) (outlining order of priority for restitution payments where there are multiple victims). The list now includes:

(A) Any individual.

(A.1) Any affected government agency.

(B) The Crime Victim's Compensation Board.

(C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(E) **Any estate** or testamentary trust.

(F) Any business entity organized as a nonprofit or not-for-profit entity.

(G) Any other business entity.

*Id.* (emphasis added).

After the amendments were enacted, this Court, in *Hunt*, again evaluated the entities encompassed within the statute's definition of "victim" for criminal events that occurred prior to the 2018 amendments. *Hunt*, 220 A.3d at 586. This Court in *Hunt* declined to retroactively apply the newly encompassed entities within the definition of victim. *Id.* In line with the Supreme Court's holding in *Veon*, this Court reiterated that the pre-amendment version of § 1106 referred to an "individual" as a "natural person." *Id.* at 590. Thus, prior to the 2018 amendments, the applicable definition of "victim" within the context of an award of restitution excluded corporate entities. *Id.* at 591.

Consequently, our review of **Veon** and **Hunt** makes clear that the pre-amendment version of § 1106 contemplates only natural persons as victims to whom restitution payments may be made. **Veon**, 150 A.3d at 454; **Hunt**, 220 A.3d at 591.

In this case, the entity which sustained the direct loss was the estate of Jared Jones. Several factors point to this conclusion. First and foremost, the trial court says as much in its 1925(a) opinion. In summarizing Appellant's present challenge to the legality of her sentence, the trial court explains:

> [Appellant] now asserts that since Ruth Streich, Administratrix **of the victim estate** is now deceased, that the order now fails to comply with 18 Pa.C.S.A. § 1106(c)(2). However, whether or not the administratrix is deceased does not alter the fact that the January 9, 2006 [s]entencing [o]rder specified both the amount and method of restitution payable **to the victim estate**.

Trial Court Opinion, 3/29/21, at 2 (emphasis added).

A closer examination of the record confirms that the estate, not Ms. Streich, sustained a direct loss. Appellant's underlying conviction stemmed from her withdrawal of funds from an estate while it remained in probate and before it was settled and its proceeds distributed.[4] N.T. Preliminary Hearing, 7/29/04, at 4-5. Appellant's judgment of sentence directed

---

[4] An estate is the real and personal property one leaves after death which passes to heirs or testamentary beneficiaries. **See** Black's Law Dictionary (2019). The process of administering a decedent's estate before settlement and distribution is known as probate. **Id.**

restitution to be paid "to Ruth Streich, **Administratrix of the Estate of Jared Jones**," not "to Ruth Streich." **See** Trial Court Order, 1/9/06 (emphasis added). While it was assumed, and eventually determined, that Ms. Streich would become the sole heir and beneficiary of the estate, legal title to estate property had yet to be effectively determined and conveyed to Ms. Streich, either at the time of the offense or at the time of sentencing. Because Ms. Streich lacked legal title to estate property during the relevant periods, Ms. Streich did not suffer a direct loss because of Appellant's crimes and the trial court could not (and did not) order the payment of restitution to Ms. Streich individually. Instead, the trial court directed that restitution be paid "to the victim **estate**." **See** Trial Court Order, 1/9/06; **see also** Trial Court Opinion, 3/29/21, at 2.

Although the estate of Jared Jones sustained a direct loss due to Appellant's improper withdrawal of estate funds, the estate, obviously, is not a natural person. Thus, under the then-applicable version of § 1106, the estate could not be considered a victim entitled to an award of restitution. **Veon**, **supra**; **Hunt**, **supra**. As such, the trial court lacked authority to order restitution under these circumstances. Consequently, Appellant cannot be held in contempt for failing to obey an unlawful court order. **Null, supra**.

Although we conclude that Appellant cannot be held in indirect criminal contempt because the trial court lacked authority to order restitution

- 12 -

payments to an unsettled estate, we hasten to note that we take no action in addressing the original January 9, 2006 restitution order. A direct challenge to the legality of the 2006 judgment of sentence must be litigated within the context of the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.[5] Our conclusion eliminates the necessity to consider Appellant's remaining claims.

Judgment of sentence for indirect criminal contempt vacated. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/30/2021

---

[5] Section 9542 provides that the PCRA "shall be the sole means of obtaining collateral relief" for those "serving illegal sentences[.]" 42 Pa.C.S.A. § 9542. Consequently, because a challenge to the legality of a sentence is cognizable under the PCRA, Appellant is required to litigate such a challenge through a proper PCRA petition. *See Commonwealth v. Moore*, 247 A.3d 990, 998 (Pa. 2021). Outside the parameters of the PCRA, this Court is without jurisdiction to examine such an issue. *See Commonwealth v. Fowler*, 930 A.2d 586, 592 (Pa. Super. 2007) ("A court may entertain a challenge to the legality of the sentence so long as the court has jurisdiction to hear the claim.") (citation omitted).